Florence S. WULKE, Appellant,

v.

HENNEPIN COUNTY WELFARE BOARD, Minnesota Department of Human Services, Respondents.

No. C4–87–221.

Court of Appeals of Minnesota.

Aug. 4, 1987.

Stuart E. Gale, Bloomington, for Wulke.

Thomas L. Johnson, Hennepin Co. Atty., Janeen E. Rosas, Asst. Co. Atty., Minneapolis, for Hennepin County Welfare Board.

Hubert H. Humphrey, III, Minn. Atty. Gen., Patricia A. Sonnenberg, Sp. Asst. Atty. Gen., St. Paul, for Minnesota Dept. of Human Services.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and CRIPPEN, JJ.

## OPINION

FOLEY, Judge.

This appeal is from an order of the district court affirming successive decisions terminating appellant Florence Wulke's medical assistance benefits by respondents Hennepin County Welfare Board (County) and Minnesota Department of Human Services (DHS).[1] Throughout these proceedings, appellant's interests have been represented by her son William Wulke. We affirm.

## FACTS

Appellant Florence Wulke is in her late 80's and has osteoporosis. Prior to 1983, she lived in her Minneapolis home with her daughter Charlotte Wulke, who has cerebral palsy. Appellant has two other children, her son William Wulke who lives in California, and a second son who resides in north Minneapolis.

Due to the failing health of his mother and sister and the deteriorating condition of the family home, William Wulke assumed informal responsibility for the affairs of the women in 1981. During a number of trips to Minnesota between April 1981 and March 1985, he obtained medical assistance and other benefits for them and placed them in nursing homes. He thereafter prepared the family home for sale.

In the summer of 1985, he submitted to the County an itemized list of out-of-pocket expenses totalling over $25,000. He claims that those expenses, which included airfare and hotel accommodations for himself and his wife and car rentals during their trips to Minnesota, were incurred in caring for his mother and sister and in preparing the home for sale. Reasoning that only expenses directly related to the sale of the property were reimbursable, the County disallowed all but about $1,600 of the expenses.[2]

The house was finally sold in October 1985 for $40,500. After deducting certain expenses, including a $9,900 judgment against appellant (which had been obtained by a nursing service that had provided live-in care for Charlotte Wulke prior to her placement in a nursing home), net proceeds of $24,617.34 were disbursed to appellant. She immediately transferred this amount to William Wulke "to reimburse him for the many expenses he has incurred on behalf and for my benefit in caring and maintaining for my property."

On January 2, 1986, the County mailed a reduction notice and a termination notice to appellant through William Wulke. The reduction notice informed appellant that medical assistance recipients were precluded from holding more than $3,000 in personal assets and that she must accordingly reduce those assets. The reduction notice

---

1. Following filing of the notice of appeal, this court received a letter from the Attorney General's office indicating that the DHS will not take an active part in the appeal and will rely upon the arguments presented by the County.

2. We note that the dissent states that William Wulke was paid nothing at all, when in fact he received $1,600.

further listed various ways in which she might reduce excess assets and warned her that to "give away or transfer property is not permissible and may create ineligibility." The termination notice provided that if she did not reduce those assets properly, her medical assistance would be terminated on February 1, 1986.

On his mother's behalf, William Wulke appealed the County's decision to terminate assistance. A hearing was held before a referee, who made a number of findings and concluded:

> The issue presented in this appeal is whether Mrs. Wulke's transfer of $24,-617.34 to Petitioner [William Wulke] defeats her continued eligibility to receive Medical Assistance.
>
> The issue is answered when we apply *Minn.Stat. 256B.17, TRANSFERS OF PROPERTY,* to the circumstances presented.
>
> *Subdivision 1* therein states the following:
>
>> *Transfers for less than market value.* In determining the resources of an individual and an eligible spouse, there shall be included any resource or interest therein which was given away, sold, or disposed of for less than fair market value within 24 months preceding application for medical assistance or during the period of eligibility.
>
> Mrs. Wulke gave to her son, Petitioner, the settlement amount of $24,617.34, clearly *M.S. 256B.17* is applicable and we must then go to Subd. 2 which states the following:
>
>> *Presumption of purpose.* Any transaction described in subdivision 1 shall be presumed to have been for the purpose of establishing eligibility for benefits or assistance under this chapter unless the individual or eligible spouse furnishes *convincing evidence* that the transaction was *exclusively* for another purpose.
>
> (emphasis added, * * *)
>
> The statute as above establishes that it is Petitioner's burden to overcome the presumption imposed by *Subd. 2.*

> The evidence is clear that Mrs. Wulke wanted to reimburse Petitioner for the expenses he had incurred in helping her * * *. The evidence is not at all convincing that the transfer was exclusively for that purpose. If the settlement check had not been paid over to Petitioner, then Mrs. Wulke's Medical Assistance would have been terminated and she would have had to use the $24,617.34 to pay her nursing home bills. Instead she wanted Petitioner to have the money.
>
> Petitioner has not met the burden, the presumption imposed by *Subd. 2* was not overcome, the excess resources were not reduced by a means among the means authorized, the Agency had basis in fact and authority of law for the termination, accordingly the termination effective 2/1/86 will be affirmed.

The referee's decision was successively adopted by the DHS through a representative of the Commissioner, and affirmed by Hennepin County District Court. This appeal followed.

## ISSUE

Did appellant fail to overcome the presumption created by Minn.Stat. § 256B.17, subd. 2 (1984)?

## ANALYSIS

■ Under Minn.Stat. § 14.69(d) and (e) (1984), an agency's determination may be reversed if it is "affected by an erroneous interpretation of the law or is unsupported by substantial evidence in view of the entire record as submitted." *Ceryes v. St. Louis County Welfare Board,* 402 N.W.2d 209, 210 (Minn.Ct.App.1987), *pet. for rev. denied,* (Minn. May 18, 1987) (quoting *Herman v. Ramsey County Community Human Services Department,* 373 N.W.2d 345, 347 (Minn.Ct.App.1985)). On review this court must examine an agency's decision independently and need not accord any special deference to the district court's review. *Maddox v. Department of Human Services,* 400 N.W.2d 136, 138 (Minn.Ct. App.1987).

■ The law provides that a recipient of medical assistance may not own more than

$3,000 in cash or liquid assets. Minn.Stat. § 256B.06, subd. 1(13) (Supp.1985). When an individual's personal property exceeds this $3,000 limit, it must be reduced by acceptable means in order for that individual to remain eligible for assistance.

Ineligibility results when excess assets are improperly transferred or given away. When excess assets are "given away, sold, or disposed of for less than fair market value", a presumption arises that transfer of those assets is for the purpose of establishing eligibility for assistance. Minn. Stat. § 256B.17, subd. 2 (1984). To overcome this presumption, a recipient of assistance is required to provide convincing evidence that the transfer was exclusively for another purpose. Minn.Stat. § 256B.17, subd. 2.

In this case, the County determined that appellant's transfer was improper because William Wulke's claimed expenses were not directly related to the sale of the home. The County's client resource specialist testified at the hearing that he disallowed many of the claimed expenses because he believed that it was unnecessary for William Wulke's wife to accompany him; the length of stay was often overly long (one trip lasted two weeks and another seven weeks); some expenses related to services performed on behalf of Charlotte Wulke; and some expenses were too old to legitimately be considered as incurred in the sale of the house (some date to 1981, but the house was not listed until 1984).

Indeed, the record establishes that William Wulke was aware that the County would have a claim on any proceeds once the house was sold and that his mother would become ineligible for assistance when she received those proceeds. In a July 1983 letter written by William Wulke to the County he acknowledges:

> "Once the property sale is consummated, my Mother is required to go off the assistance program until the net profits from the sale have been paid in to the County by monthly payments in the amount of the difference between her Social Security and Veterans payments

and the monthly charges at [the nursing home]."

From this, it is clear that he understood that if he did not spend this money it would go to the County.

Appellant merely asserts that logic or common sense dictates that no one would expend $25,000 in order to maintain his mother's eligibility for assistance. Under the presumption created by Minn.Stat. § 256B.17, subd. 2, however, appellant is required to provide *convincing* evidence that the transfer was made *exclusively* for another purpose. We agree with the referee's conclusion that the evidence is not convincing that the transfer was exclusively for the purpose of reimbursing her son, and that at least a portion of the purpose behind the transfer was to maintain appellant's eligibility for assistance.

We therefore conclude that the County's decision is supported by substantial evidence in the record and is not arbitrary and capricious.

## DECISION

Affirmed.

CRIPPEN, Judge, dissenting.

I respectfully dissent. The Department of Human Services has employed an erroneous rule of law and its resulting decision should be reversed.

Under medical assistance statutes, gifts of a prospective recipient, reducing the person's available resources, are presumed to have been aimed at creating eligibility for benefits. Minn.Stat. § 256B.17, subd. 2 (1986). The condition for application of this presumption is the occurrence of a transfer "for less than fair market value." *Id.* subd. 1.

Thus, the critical question here is whether Florence Wulke transferred $24,617.24, or any part of that sum, for less than fair value.

The department referee found that William Wulke actually incurred expenses and loss of wages in the amount of $25,234.04:

> [Appellant] for many years has lived in California. He is a project manager for

a construction company. The circumstances of Mrs. Wulke and Charlotte deteriorated (health, condition of the house, living arrangements) and [appellant] took responsibility to do something about it. [Appellant] made a number of trips here around the problems that were presented, getting benefits and care for Charlotte, arranging for housekeepers, applying for Medical Assistance, placing mother and Charlotte in nursing homes, cleaning-out the house and ultimately getting the house sold. These trips were made from 4/81–3/85 and varied in length. The longest duration here was about seven weeks (11/28/82–1/16/83).

Each of the trips was described in testimony, and expense for each of the trips has been documented. The time, expense and care that [appellant] has shown are all considerable. [Appellant] claims total expenses and wage loss in the amount of $25,234.04 and the Referee finds that [appellant] has supported that amount by evidence.

The county agency challenged the legitimacy of some expenses incurred by William Wulke, but the referee resolved these factual questions in Wulke's favor.

In spite of the finding on Wulke's contribution, the referee concluded that there had been a transfer to raise the presumption of seeking eligibility, and that the presumption was not overcome. This conclusion was premised on the erroneous opinion that a transfer for consideration was nevertheless for less than fair value. This construction of the law conflicts with reason and with a prior decision of this court.

Prior to 1981, the statutory presumption of seeking medical assistance was applicable to transfers made "without receiving a reasonable consideration therefor." Minn. Stat. § 256B.17 (1980). 1981 amendments to the section used the phrase "for less than fair market value" to substitute for the prior language. Minn.Stat. § 256B.17, subd. 1 (Supp.1981). It has been determined previously that the amended statute still poses the issue whether there has been a transfer for "less than adequate consideration." *Herman v. Ramsey County Community Human Services Department,* 373 N.W.2d 345, 348 (Minn.Ct.App.1985). This holding demonstrates the inescapable meaning of language on a transfer for less than value.

Because of the 1981 amendment, the referee concluded that the issue of consideration was removed from these cases. That conclusion is erroneous. The conclusion leads to a denial of benefits that is not permitted by statute. It also produces the incongruous result of approving disbursement of $9,889.25 to a nursing service and denying any payment to William Wulke for expenses incurred in furnishing equally necessary services.

The department's analysis produces a result that approves an earlier decision of the county agency. The county decision purports to recognize only those contributions to Florence Wulke that directly related to sale of her home. This analysis is also unsupported in the law, and it makes even more remarkable the recognition that a nursing service should be paid $9900, although William Wulke is to be paid nothing at all.

It is certainly true that cases of this kind involve serious factual issues of whether a relative's expenses have been incurred as claimed, whether they were necessary, and whether they represent consideration separate from family favors and assistance that is fairly chargeable to the relatives of a prospective recipient. Here, however, these issues are not before us, because of the referee's findings on consideration furnished. In light of these findings, the law compels us to reverse the referee's conclusion to the extent of $25,234.04 transferred to William Wulke.